PAUL DELOS REYES et al., Plaintiffs-Appellants, v. THE TRAVELERS INSURANCE COMPANIES, Defendant-Appellee.

First District (3rd Division)   No. 87—0960

Opinion filed September 21, 1988.

McNAMARA, J., dissenting.

Topper & Weiss, Ltd., of Chicago (Barry Weiss, of counsel), for appellants.

Raymond R. Cusack and Nancy Tordai O'Shaughnessy, both of Johnson, Cusack & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellee.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

In this case we confront a question of the proper interpretation of an insurance contract. Plaintiffs Paul delos Reyes and Priscilla delos Reyes sued for a judgment declaring that the coverage limit pertinent to this case is $25,000, under the policy in which defendant, The Travelers Insurance Companies (Travelers), agreed to cover the driver responsible for the automobile accident which caused plaintiffs' injuries. The trial court granted Travelers' motion for summary judgment and plaintiffs appeal.

On August 18, 1984, plaintiff Paul delos Reyes was a passenger in his own truck, which his brother Remar was driving, when they were involved in an accident in Indiana. Primary coverage for the accident was provided by the Reyes' insurance company. Travelers provided excess insurance coverage under a policy issued in Massachusetts to Paul's sister, Aquilina Panaligan, which included Remar as an additional insured and provided coverage for bodily injury limited to $10,000 per person. The policy states:

> "[W]e will pay damages to people injured or killed in accidents if you or a household member is legally responsible for the accident. ***
>
> If the accident occurs in any *** state [other than Massachusetts] *** your policy will automatically apply to that accident as follows:
>
> If the state *** has:

1. A financial responsibility law or similar law specifying limits of liability for bodily injury or property damage higher than the limits you have purchased, your policy will provide the higher specified limits.

2. A compulsory insurance or similar law requiring your auto to have insurance whenever it is used in that state ***, your policy will provide at least the required minimum amounts and types of coverage."

The Indiana Motor Vehicle Safety Responsibility and Driver Improvement Act, in effect at the time of the accident, provided:

"Proof of financial responsibility shall mean proof of ability to respond in damages for liability thereafter incurred, arising out of the *** use of a motor vehicle, in the amount of twenty-five thousand dollars ($25,000) because of bodily injury to or death of any one (1) person ***." (Ind. Code Ann. §9—2—1—15 (West 1979 & Supp. 1987).)

Travelers offered plaintiffs $10,000. Plaintiffs rejected the offer and brought this action for a judgment declaring that in the words of the policy this accident did occur in a State other than Massachusetts, to wit, Indiana, and that that State did have a financial responsibility law specifying limits higher than $10,000, to wit, $25,000, and therefore the policy's coverage limit for the accident is $25,000.

■ Compulsory automobile insurance laws, which are in effect in a majority of the 50 States, require automobile owners to prove their ability to respond in damages, through either a liability bond, a certificate of self-insurance, or a policy of liability insurance, as a prerequisite to registering the automobile. Financial responsibility laws, in contrast, do not provide prerequisites for registration; the laws apply only after the automobile owner has had an accident. (12A G. Couch, Insurance pars. 45:679, 45:721 (2d ed. rev. 1981).) "A financial responsibility law effectively allows a motorist one 'free' accident." (*Field v. Western Preferred Casualty Co.* (La. App. 1983), 437 So. 2d 344, 346; see 8 A.L.R.3d 388, 390 (1966).) Indiana has a financial responsibility law which "does not require a resident or non-resident to carry motor vehicle liability insurance *** until after the first accident occurs." (*Grimes v. Government Employees Insurance Co.* (Ind. App. 1980), 402 N.E.2d 50, 52.) Thus, the parties agree that the Indiana law does not directly apply to the accident at issue in this case. However, plaintiffs argue that the Indiana law does "specify[ ] limits of liability," within the meaning of the contract, of $25,000.

■ We apply general principles of contract construction in determining the meaning of insurance policies. (*Wisdom v. Stonewall In-*

*surance Co.* (1986), 139 Ill. App. 3d 1082, 1084, 487 N.E.2d 1289.) Where the terms of an insurance policy are clear and unambiguous, the court must give effect to those terms. (*Wisdom,* 139 Ill. App. 3d at 1084.) The court must interpret each provision in light of the entire policy. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 493, 475 N.E.2d 872.) Any ambiguous terms in the insurance agreement will be construed against the insurer as the party who prepared the agreement. *Kirk v. Financial Security Life Insurance Co.* (1978), 75 Ill. 2d 367, 371, 389 N.E.2d 144.

■ The accident in this case occurred in Indiana. Therefore, the policy "automatically appl[ies] to that accident" its provision incorporating the limits of liability specified in Indiana's financial responsibility law. Indiana has a financial responsibility law which provides that certain drivers must be able to prove that they have $25,000 worth of insurance for bodily injury caused by the use of a motor vehicle. Ind. Code Ann. §9—2—1—15 (West 1979 & Supp. 1987).

Travelers contends that the policy provides the higher limits only if the financial responsibility law requires the owner to have such coverage at the time of the accident. The policy provision regarding compulsory insurance applies only when the law "requir[es]" certain amounts of coverage. However, the policy states on its face that the financial responsibility provision applies whenever the law of the State in which the accident occurs "specif[ies]," not requires, higher limits. Since the contract does not define the term "specifying," we look to its common meaning. (*Robinson v. Hertz Corp.* (1986), 140 Ill. App. 3d 687, 688, 489 N.E.2d 332.) According to Webster's Third New International Dictionary 2187 (1971), "specify" means "[t]o mention or name in a[n] *** explicit manner: tell or state precisely or in detail." The Indiana Motor Vehicle Safety Responsibility and Driver Improvement Act mentions explicitly, and states precisely, the amount of $25,000 as the minimum limit of liability for bodily injury.

Travelers relies on *Wisdom, Grimes,* and *Green v. State Farm Mutual Automobile Insurance Co.* (1976), 168 Ind. App. 434, 343 N.E.2d 828, to support a more restrictive interpretation of the policy. However, the policies interpreted in those cases included strikingly different words from the policy at issue herein, and therefore those cases do not support the result Travelers seeks. In *Wisdom,* the policy stated: " 'If an insured person becomes subject to the financial responsibility law *** of another state *** we will interpret this [policy] to provide any broader coverage *required* *** by those laws ***.' " (Emphasis added.) (*Wisdom,* 139 Ill. App. 3d at 1083.) Travelers limited the application of its compulsory insurance provision to circum-

stances in which the law required such insurance; by the express terms of its policy, in clear contrast, it stated that the financial responsibility provision applied whenever State law specified a higher limit. Again in *Grimes* the policy provided coverage beyond the shown policy limits "[i]f, under the provision of the motor vehicle financial responsibility law of any state *** a non-resident [insured] is *required* to maintain insurance" in excess of the policy's coverage. (Emphasis added.) *Grimes*, 402 N.E.2d at 51.

In *Green* the policy stated that it "is *certified as proof* of financial responsibility *for the future* under the provisions of the motor vehicle financial responsibility law of any state." (Emphasis added.) (*Green*, 168 Ind. App. at 436, 343 N.E.2d at 829.) Since financial responsibility laws apply only after the owner has had an accident, the provision that the policy is proof of responsibility for the future clearly restricts its own operation, clarifying that the clause does not pertain to the first accident. The provision at issue in the case at bar does not similarly restrict its application. It clearly provides increased coverage when there are financial responsibility laws "specifying," rather than "requiring," coverage in excess of the policy amounts.

Travelers asks us to interpret the contract as though it said that the policy would apply higher limits if the State in which the accident occurred has a "financial responsibility law or similar law [which is applicable to the accident] specifying limits of liability." We will not read into a contract terms which the parties did not include (*Walsh v. State Farm Mutual Automobile Insurance Co.* (1968), 91 Ill. App. 2d 156, 164, 234 N.E.2d 394), especially when the added terms would serve to restrict coverage. *National Discount Shoes, Inc. v. Royal Globe Insurance Co.* (1981), 99 Ill. App. 3d 54, 60, 424 N.E.2d 1166.

We find that under the clear and unambiguous terms of the insurance agreement, Travelers agreed to provide coverage of up to $25,000 per person for bodily injury caused by any accident in Indiana, including the accident at issue in this case. Accordingly, we reverse the trial court order granting Travelers' motion for summary judgment and we grant plaintiffs' motion for summary judgment.

Reversed.

FREEMAN, J., concurs.

JUSTICE McNAMARA, dissenting:
I respectfully dissent from the majority holding that the policy's use of the word "specifying," instead of "requiring," mandates the

enlargement of the policy limits to the admittedly not-applicable financial responsibility statute's higher limits. I agree with the trial court's interpretation of the policy, *i.e.*, that the statutory requirements were not applicable or relevant where the statute itself was not applicable.

A small minority of jurisdiction holds, as the majority does here, that where a policy states it will comply with a financial responsibility law, the statutory terms must be read into the policy as contractual terms and are not just applicable after the first accident occurs. (See Annot., 8 A.L.R.3d 388, §4 (1966).) The large majority of jurisdictions, however, holds, as I would here, that a policy provision deferring to a statute has no effect until the statute actually becomes applicable.

The majority acknowledges that Indiana law, which this court must follow, expressly holds that policy provisions referring to financial responsibility laws remain dormant until after the first accident occurs. (*Grimes v. Government Employees Insurance Co.* (Ind. App. 1980), 402 N.E.2d 50; *Green v. State Farm Mutual Automobile Insurance Co.* (1976), 168 Ind. App. 434, 343 N.E.2d 828.) The majority momentarily defers to the parties' agreement "that the Indiana [statute] does not directly apply" here. (175 Ill. App. 3d at 171.) Thus, it would appear the insurer properly relied upon the limits of liability set forth in the policy, and not those recited in the Indiana statute. See 6B J. Appleman, Insurance Law & Practice §4297, n.84.35 (Buckley ed. 1979), citing *Green v. State Farm Mutual Automobile Insurance Co.* (1976), 168 Ind. App. 434, 343 N.E.2d 828.

The majority, however, leaps upon one word in the policy which differs from the *Grimes* and *Green* policies and rests its analysis entirely upon one of Webster's definitions of "specify." The real error lies in the majority's focus upon the policy language as though it were merely an ordinary insurance policy provision.

The proper construction of financial responsibility laws, to determine whether a policy must conform to the statutory provisions, demands a primary focus upon the purpose of the statute, and only a secondary focus on any potentially vague or conflicting policy language. In fact, it is well established that general principles of construction of ordinary insurance policies are *disregarded* in determining the scope and extent of coverage under a financial responsibility law preview in a policy where necessary to accomplish a legislative aim. (7 Am. Jur. 2d *Automobile Insurance* §20, at 466 (1980).) For example, the public policy behind financial responsibility laws supersedes any rules of public policy applied in ordinary insurance law. (7 Am. Jur. 2d *Automobile Insurance* §29, at 478 (1980).) This court should

focus, therefore, on the statute which the insured asks us to invoke, and not merely focus, with no reference to the statute's purpose, upon a single word in the out-of-State clause of the policy.

The key in the interpretation of a policy incorporating provisions of financial responsibility statutes is to give effect to the intention of the legislature, notwithstanding what the contractors understood it to be, and notwithstanding the contractors' agreement to the contrary. (7 Am. Jur. 2d *Automobile Insurance* §29, at 479-80 (1980).) Thus, whether the Act and policy are in either direct or indirect conflict, the policy must be interpreted and construed in light of the purposes of the Act. 7 Am. Jur. 2d *Automobile Insurance* §§28 through 29, at 475-80 (1980).

An examination of the purpose of financial responsibility laws immediately reveals their rigid limitation to a class of persons having been involved in a first accident or who have had their license suspended—a class of which plaintiff here is not a member. The key distinction between the compulsory insurance laws and the financial responsibility laws is that financial responsibility laws apply to a limited group of drivers. (6B J. Appleman, Insurance Law & Practice §4299 (Buckley ed. 1979).) In contrast, compulsory insurance laws apply to an unlimited group of all vehicle owners. (6B J. Appleman, Insurance Law & Practice §4299 (Buckley ed. 1979).) Compulsory insurance mandates automobile liability insurance in order to operate a vehicle on the highways in that State. Financial responsibility laws, however, are purposely designed to apply only after one accident. 6B J. Appleman, Insurance Law & Practice §4299 (Buckley ed. 1979).

Indiana case law emphasizes that the financial responsibility statute is meant to increase public protection as to a select group of drivers, thus protecting victims against a second accident. (*Grimes*, 402 N.E.2d 50.) The insured here does not fall within that select group and cannot therefore invoke the inapplicable statute.

I agree with the trial court's well-reasoned opinion that to hold otherwise would convert the policy into a variable coverage policy. The policy itself expressly limits coverage to the limits contained therein, with no reference to a variable rate.

The majority repeatedly points to the different language used in the policy's references to compulsory and financial responsibility laws. The difference in language merely reflects the critical distinction in the two types of insurance. The policy will pay the "specified limits" in a "financial responsibility law or similar law specifying limits of liability." The limits are "specified" instead of "required" because it is absurd to "require" compliance with a statute which will be inapplica-

ble in numerous cases.

Moreover, "specified" is also defined in Webster's as: "give a specific character or *application* to." (Emphasis added.) (Webster's Third New International Dictionary 2187 (1971).) We can hardly invoke a financial responsibility statute which specifies, or gives application to, limits in an inapplicable statute.

The policy states it will provide the "required minimum amounts" under a "compulsory insurance or similar law requiring" insurance. Again, compulsory insurance is, by definition, required. Financial responsibility laws do not even demand compliance after the first accident where, *e.g.*, the individual opts to relinquish his license or not to drive in that State.

I believe the majority errs in reading into the policy the statutory provisions, thus extending coverage, where the statute itself is not applicable. I would affirm the trial court's entry of summary judgment in favor of defendant.