Kimberly YOUNG, a Minor, By and Through Her Mother and Next Friend, Sandy Young BROWN, Plaintiff,

v.

UNITED STATES FIDELITY & GUARANTY INSURANCE COMPANY, Defendant.

Civ. A. No. S90–0257(P).

United States District Court, S.D. Mississippi, S.D.

Sept. 30, 1991.

Carter O. Bise, Gulfport, Miss., for plaintiff.

Stanford E. Morse, Jr., Gulfport, Miss., and R. William Roland, Tallahassee, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This cause is presently before the Court on the Defendant's Motion for Summary Judgment and the Plaintiff's Cross–Motion for partial summary judgment on the issue of uninsured motorist insurance benefits. Having reviewed the parties' briefs and being otherwise fully advised in this matter, the Court finds that the Defendant's motion for summary judgment should be granted and Plaintiff's Motion for Partial Summary Judgment should be denied.

### I.

### FINDINGS OF FACT

This cause is an action by the Plaintiff, Kimberly Young ("Kimberly"), to recover actual damages arising out of Defendant United States Fidelity & Insurance Company's ("USF & G") alleged refusal to pay her uninsured motorist benefits.

The origin of this action is a one-car automobile accident which occurred on June 12, 1988 in Dixie County, Florida. At the time of the accident, Kimberly was riding as a passenger in the back of a Toyota pick-up owned by her father, Dennis Young. Kathy Carter Fryer ("Kathy"), was driving the vehicle, with Dennis Young's permission, at the time of the acci-

dent. Dennis Young and Kimberly's mother, Sandy Young Brown, were divorced and living apart at this time. Kimberly lived primarily with her mother in Gulfport, but would occasionally visit her father in Camilla, Georgia.

On the day of the accident, Kimberly and Kathy had driven to Dixie County, Florida. While Kathy was driving, she lost control of the pick-up truck, resulting in a single-vehicle accident in which Kimberly was severely injured. Kimberly incurred substantial medical expenses as a result of the accident. Kimberly has undergone a number of surgical procedures and will likely continue to require surgical care in the future.

At the time of the accident, Kathy was insured under her father's automobile insurance policy, written by USF & G. That policy ("the USF & G policy") is the subject of this dispute. Kimberly seeks uninsured motorist benefits under the USF & G policy, which provided liability coverage of $100,000 per accident and uninsured motorist coverage of $40,000 per accident. USF & G has already paid the $100,000 liability limit provided under its policy and $50,000 for personal injury protection coverage provided under its policy.

In addition to the proceeds she received under the USF & G policy, Kimberly also collected under the liability provisions of Dennis Young's automobile insurance policy with Georgia Farm Bureau. The Georgia Farm Bureau policy provided liability limits of $15,000 per person and $30,000 per accident, with uninsured motorist coverage in an equal amount. Kimberly made a claim on the Georgia Farm Bureau policy and was paid the $15,000 policy limit. Thus, the Georgia Farm Bureau policy is not at issue here.

After investigating the circumstances of the accident, USF & G denied any coverage for uninsured (or underinsured) motorist benefits, based upon its interpretation of its policy. There are several policy provisions relevant to the Kimberly's claim for damages against USF & G. Those provisions read in relevant part:

**OUT OF STATE COVERAGE**

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required *minimum amounts* and types of coverage. (emphasis added)

B. No one will be entitled to duplicate payment for the same elements of loss.

**UNINSURED MOTORISTS COVERAGE—GEORGIA**

B. "Insured" as used in this endorsement means:

1. Your or any "family member."

2. Any other person "occupying" "your covered auto."

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

## II.

### CONCLUSIONS OF LAW

The policy language set out above forms the basis of each party's argument that it is entitled to summary judgment. Both parties confess that there are no genuine issues of material fact and that, therefore, this case is one which may properly be adjudicated on the cross-motions for summary judgment. Fed.R.Civ.P. 56(c). USF & G argues that the language clearly leads to the conclusion that Kimberly is entitled to no recovery for uninsured (or underin-

sured) motorist coverage. Kimberly argues, conversely, that she is covered under the uninsured motorist provision of the USF & G policy and is entitled to benefits under the policy.

At the outset, it is important to note what is not in dispute here. Neither party suggests that Kimberly should not be considered an "insured" under the policy USF & G issued to Phillip Carter. The fact that Kimberly has already received $150,000 in benefits under the liability and personal injury protection provisions of the policy effectively precludes any such argument. Likewise, USF & G agrees with Kimberly's contention that, for purposes of coverage, uninsured and underinsured are synonymous terms. Coverage would be available to Kimberly if the Court should find that Phillip Carter's vehicle was underinsured.

The crux of this contractual interpretation dispute concerns whether Carter's vehicle may be said to have been "underinsured" at the time of the accident on June 12, 1988. USF & G says that the pickup truck in which Kimberly was riding was not underinsured and that, therefore, Kimberly is entitled to no uninsured/underinsured motorist benefits.

Kimberly argues that she is entitled to the sum of $400,000 in "stacked" uninsured motorist benefits. She arrives at this figure by "stacking" the $100,000 liability limits on each of the four vehicles which USF & G insured for Carter.[1]

As a general rule, insurance policies are to be construed in accordance with general principles of contractual construction. *Western Line Consol. Sch. v. Continental Cas. Co.*, 632 F.Supp. 295 (N.D.Miss.1986). Whether any ambiguity in the insurance contract exists is a question of law for the court to decide. *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1175 (5th Cir.1981). When an ambiguity exists, and as a rule of construction, each and every provision of an insurance contract is to be construed most strongly against the

drafter. *Brander v. Nabors*, 443 F.Supp. 764 (N.D.Miss.1978), *aff'd* 579 F.2d 888 (5th Cir.1978). Since USF & G drafted the language in the uninsured motorist coverage provisions of the insurance policy in question here, any ambiguities in those provisions will be construed against the insurer and in favor of the putative insured, Kimberly Young. *See Williams v. Life Ins. Co. of Georgia*, 367 So.2d 922 (Miss.1979). However, the Court finds no ambiguity in USF & G's policy and will enforce the policy as written by USF & G. The Court notes that this is indeed an unfortunate case and one which involves serious injuries and damages. However, there are many unfortunate cases which come before the Court for resolution and the Court's compassion for the injured party cannot serve to change the law in this area or to change the plain language of USF & G's insurance policy.

The Court is first faced here with a choice of law decision: Plaintiff argues that Florida law applies to the policy in question while USF & G says that Georgia law controls since the policy was issued and the vehicle was principally garaged in Georgia. Mississippi law directs that, in the absence of an effective choice of law by the parties, a choice of law decision should be based upon a determination of which state has the most substantial contacts with the parties and the subject matter of the action. *See Boardman v. United Services Auto. Ass'n*, 470 So.2d 1024 (Miss. 1985). Mississippi applies the "center of gravity" test to the choice of law question presented. Thus, "the law of a single state does not necessarily control every issue in a given case." *Id.* at 1031.

In this case, Kimberly contends that the "OUT OF STATE COVERAGE" provisions of the USF & G policy constitute an effective choice of law by the parties. The Court does not agree. All that the "OUT OF STATE COVERAGE" language of the policy addresses is the amount of coverage

---

1. The Court notes that even if stacking were available, the proper amount should probably be $160,000 (four times the $40,000 in uninsured motorist coverage provided by USF & G's policy), not the $400,000 figure advocated by the Plaintiff.

available when an accident occurs in a state other than the state in which the insured vehicle is principally garaged. Nothing in the relevant policy language states that the substantive law of the state in which the accident occurred is to be applied for all purposes to an out of state accident. The Court is of the opinion that proper application of Mississippi's center of gravity approach for choice of law decisions supports the conclusion that Georgia law should be applied generally in this case. For it is Georgia law which is "the law of the state the parties understood to be the principal location of the risk." *Boardman,* 470 So.2d at 1033.

■ Therefore, if the Court were to conclude that the law of Florida mandates higher limits of liability coverage than the amounts set out in the declaration page of Carter's policy, then the Court would only apply Florida law in determining the proper amount of personal injury or property damage coverage available to Kimberly under the "OUT OF STATE COVERAGE" provisions of USF & G's policy. However, the Court can discern no basis for applying Florida law to all other issues in dispute here, including the question of stacking uninsured motorist coverage. Florida law is relevant, the Court finds, only on the limited issue of whether USF & G has complied with the dictates of Florida's financial responsibility or compulsory insurance law. Once that determination is made, the center of gravity test directs this Court back to Georgia law. These remaining issues must be resolved by reference to Georgia law.

In this context, the Court applies Georgia law in this case based upon the Court's finding that Georgia has the most substantial contacts with the parties and the cause of action involved here: Phillip Carter is a Georgia resident and his vehicle was insured and principally garaged in the State of Georgia. Kimberly has also already been paid benefits under another Georgia-based insurance policy, her father's policy with Georgia Farm Bureau. Kathy Carter Fryer, who was driving the automobile in which Kimberly was riding, is also a Georgia resident.

The only connection between Florida and the parties in this case is that Florida was the situs of the accident. The Court does not find that the situs of the accident alone is a sufficient basis for applying Florida law to this case. At the time USF & G issued its policy to Carter, USF & G and Carter apparently believed that the principal location of the risks which it was insuring was in Georgia, since the policy was issued under an endorsement tailored specifically to Georgia law. *Cf. Boardman,* 470 So.2d at 1033–1034.

Florida's financial responsibility law does not mandate coverage higher than the $100,000 policy limits which have already been paid to Kimberly. Nor does Florida's compulsory insurance law mandate any more coverage than that which Kimberly has already been afforded under USF & G's policy. The Court reaches these conclusions based upon its interpretation of the "OUT OF STATE COVERAGE" language of the USF & G policy, which is set out fully above. This language must be considered in two parts: (1) the "financial responsibility law" provision; and (2) the "compulsory insurance" provision.

### A. The Financial Responsibility Provisions of Florida Law

The financial responsibility law provision of USF & G's policy prescribes, in essence, that when an accident occurs in a State whose financial responsibility law specifies limits of liability for personal injury or property damage higher than those shown in the Declaration page of the USF & G policy, USF & G's policy will provide the higher specified limit. In essence, if the State in which the accident occurred provides more beneficial coverage under its financial responsibility law, then USF & G will afford its insured the benefit of the more generous law.

■ The accident in this case occurred in Florida. Thus, the Court must compare Florida's financial responsibility law with the declarations page of USF & G's policy. Florida's financial responsibility law only

mandates coverage for personal injury or property damage in the amount of $10,000. Fla.Stat.Ann., § 324.021 (1989). The $100,-000 limit of liability coverage provided in Carter's policy complies with and greatly exceeds the $10,000 limit mandated by Florida law. Therefore, the Court finds that USF & G's policy fully complied with Florida's financial responsibility law and no additional coverage is mandated under that law.

■ Florida's financial responsibility law "specifies" that drivers must only carry $10,000 worth of insurance for bodily injury protection. In effect, since USF & G's policy is more generous than the financial responsibility law of Florida, then Kimberly is entitled to the benefit of the more generous provisions of the declarations page of USF & G's policy. *See Delos Reyes v. Travelers Insur. Cos.*, 175 Ill. App.3d 169, 124 Ill.Dec. 783, 529 N.E.2d 764 (1988) (financial responsibility law applies whenever law of state in which accident occurs specifies higher limits than those in policy).

■ In this connection, the Court finds no foundation for Plaintiff's argument that Florida case law should be applied to allow "stacking" of uninsured motorist coverages to obtain coverage in the amount of $400,000. While it is correct that Florida law permits the stacking of uninsured motorist coverage, *Coleman v. Florida Insurance Guaranty Association*, 517 So.2d 686 (Fla.1988), such stacking is only available when the bodily injury limits of a policy are less than the uninsured motorist limits. *Shelby Mutual Insurance Co. v. Smith*, 556 So.2d 393 (Fla.1990). As indicated above, the personal injury protection limit in the USF & G policy was $50,000 and the liability limit was $100,000, while the uninsured motorist limit was only $40,000. Clearly, the bodily injury limits are not less than the uninsured motorist limits *unless* Kimberly is permitted to stack the $40,000

uninsured motorist coverage on the four vehicles USF & G insured for Phillip Carter.[2]

■ To permit the stacking which Kimberly seeks here, the Court would be required to read the substantive law of Florida into the provisions of USF & G's policy. However, since USF & G has complied with Florida's financial responsibility law, the Court finds that Florida substantive law should not be applied to the question of the amount of coverage available to Kimberly. While Florida's case law should properly be read into all Florida insurance policies, the Court has found no authority for reading the substance of another State's law into a policy written in Georgia.

The Court does not feel that the State of Florida has sufficient contacts with either the parties or the cause of action here to justify engrafting Florida law onto USF & G's Georgia-based insurance policy. *But see Safeco Ins. Co. of America v. Ware*, 424 So.2d 907 (Fla.Dist.Ct.App.1982) (Florida had sufficient contacts to support application of Florida law to insurance contract negotiated, executed, and delivered in New Jersey). USF & G need only comply with the requirements of Georgia law related to stacking or non-stacking of uninsured motorist benefits. As discussed below, the Court finds that USF & G has fully complied with Georgia's law on uninsured motorist coverage.

■ Again, even if the Court were to apply Florida law here, it is important to note the flaw in Plaintiff's argument: nothing in Florida's statutory or case law "specifies" or mandates any particular level of uninsured motorist coverage to be carried on a vehicle. All that Florida law requires is that such coverage be *offered* when an insurance company writes a liability insurance policy. Fla.Stat.Ann., § 627.727 (1989). The insured has the option of waiv-

---

**2.** As noted above, the Court is of the opinion that the proper figure for stacking purposes is the uninsured motorist coverage ($40,000), not the liability coverage of the USF & G policy. *See Hartford Casualty Ins. Co. v. O'Callaghan*, 176 Ga.App. 135, 335 S.E.2d 407 (1985); *Shelby*

*Mutual Ins. Co. v. Smith*, 556 So.2d 393 (Fla. 1990); *Hurtado v. Florida Farm Bureau Casualty Co.*, 557 So.2d 612 (Fla.Ct.App.1990) (insured may stack *uninsured motorist coverage* on number of vehicles covered).

ing uninsured motorist coverage. *Id.* The statute reads in relevant part:

"... However, the coverage required under this section is not applicable when, or to the extent that, any insured named in the policy rejects the coverage in writing...."

While Florida's statute does provide for a specially approved form for such waivers, the Court is not persuaded by Plaintiff's assertion that Phillip Carter did not make an effective waiver of additional uninsured motorist coverage since he did not execute a waiver on the form prescribed by Florida law. As discussed above, the vehicle insured by USF & G was principally garaged in Georgia and Carter was a Georgia resident. Therefore, the Court finds that the waiver which Carter signed is effective and binding even though not executed on a Florida-approved form. Thus, the Court concludes that there is no basis under Florida law for reaching the stacking question here when there is no mandatory level of uninsured motorist coverage required under Florida's financial responsibility law.

Alternatively, since USF & G's policy provides more generous coverage than the financial responsibility law of the State of Florida, the Court concludes that USF & G's policy must prevail over the provisions of Florida law. The Court will apply the provisions of Georgia law, where the USF & G policy was written, to ascertain the amount of coverage, if any, to which Kimberly is entitled under the uninsured motorist provisions of USF & G's policy.

### B. The Compulsory Insurance Provisions of Florida Law

■ Florida also has a compulsory, "no-fault" automobile insurance law, which requires as a minimum $10,000 in personal injury and property damage coverage. Fla.Stat.Ann., § 627.736 (1989). Here also, the Court finds that the $50,000 personal injury protection coverage provided under USF & G's policy fully conforms to Flor-

ida's compulsory insurance law. Thus, the Court finds no basis for affording Kimberly additional insurance proceeds under the compulsory insurance language of the "OUT OF STATE COVERAGE" provisions of the USF & G policy. She has already been afforded the benefit of the more generous provisions of USF & G's policy (i.e., $50,000 in personal injury protection instead of the $10,000 minimum mandated by Florida's compulsory insurance law).

Based upon the Court's conclusion that USF & G's policy complies with both the financial responsibility and compulsory insurance provisions of Florida law, the Court finds that Plaintiff is not entitled to the benefit of Florida's law on stacking and is not entitled to "stack" uninsured motorist coverage in the manner she seeks to do so here. Rather, the Court must apply Georgia law on the issue of stacking.[3]

■ Under Georgia law, "[a]s a general rule, there can be no stacking or pyramiding of the uninsured motorists provisions as to single policy coverage of automobiles." *Jenkins v. Lanigan*, 196 Ga.App. 424, 396 S.E.2d 28, 30 (1990) (*citations omitted*). The Georgia courts have noted that while stacking is available under multiple insurance policies, Georgia adheres to the general rule that no stacking is available under a single policy, regardless of the number of vehicles insured. *See Georgia Farm Bureau Mut. Ins. Co. v. Owens*, 178 Ga.App. 446, 343 S.E.2d 699 (1986) (stacking prohibited under single policy insuring fleet of vehicles). Kimberly concedes that, absent any ambiguities in USF & G's policy, "Georgia law would not recognize underinsurance coverage in a situation such as the one at bar." Plaintiff's Findings and Conclusions at paragraph 18. *See also Hartford v. O'Callaghan*, 176 Ga.App. 135, 335 S.E.2d 407 (1985).

■ USF & G seeks summary dismissal of Kimberly's complaint. Thus, the Court must ascertain whether there is any re-

---

**3.** Even Florida law does not appear to offer Plaintiff the relief she seeks. As USF & G points out, Florida's law on stacking was changed when Fla.Stat.Ann., § 627.727 was amended to authorize insurers to offer non-stacking policies.

Prior to 1987, Class II insureds such as Kimberly could not stack. After 1987, Kimberly still could not stack if the policy in question was issued as a "non-stacking" policy. In this case, Phillip Carter purchased a non-stacking policy.

maining basis upon which Kimberly may recover additional proceeds under USF & G's policy. The USF & G policy involved here also provides a "setoff" provision which reads as follows:

**LIMIT OF LIABILITY**

B. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A....

Applying this setoff language to the benefits already paid Kimberly, it appears to the Court that Kimberly is entitled to no further proceeds under the USF & G poli-. cy: she has already received $150,000 under the policy, an amount which greatly exceeds the $40,000 in coverage under the uninsured motorists provision of the policy. In short, all uninsured motorist proceeds have already been set off as a result of payments made under the liability and personal injury protection provisions of the policy.

Plaintiff offers no argument that Georgia law prohibits a setoff provision such as the one in USF & G's policy. To the contrary, it appears that such provisions are condoned by Georgia statutory and case law. *See Knight v. Georgia Farm Bureau Mutual Insurance Company,* 184 Ga.App. 312, 361 S.E.2d 190 (1987); Ga. Code Ann., § 33–7–11(b)(1)(D)(ii) (1989).

Having reviewed all the cases and the arguments presented by the parties, the Court finds that there are no genuine issues of material fact. The Court reiterates its feeling that this is one of those unfortunate cases in which they would like to grant relief if that were possible. However, the Plaintiff's hapless circumstances cannot justify this Court in re-writing the law or the language of USF & G's insurance policy. The Court further finds that Plaintiff Kimberly Young is not entitled to partial summary judgment on the issue of liability but that USF & G is entitled to summary judgment on the issue of liability. Accordingly, it is hereby

ORDERED AND ADJUDGED that the Plaintiff's Motion for Partial Summary Judgment is denied;

IT IS FURTHER ORDERED AND AD-JUDGED that the Defendant's Motion for Summary Judgment is granted;

SO ORDERED AND ADJUDGED.