No. 65,237

FARM BUREAU MUTUAL INSURANCE COMPANY, *Appellant*, v. OLD
HICKORY CASUALTY INSURANCE COMPANY, *Appellee*.

(810 P.2d 283)

Opinion
filed April 15, 1991.

*Ben T. Schmitt*, of Wallace, Saunders, Austin, Brown & Enochs, Char-
tered, of Overland Park, argued the cause and *Richmond M. Enochs*, of
the same firm, was with him on the briefs for appellant.

*Joseph R. Ebbert*, of Niewald, Waldeck & Brown, of Overland Park,
argued the cause and *Catherine R. Hutson*, of the same firm, was with him
on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Terry Coleman, a passenger and a Kansas resi-
dent, was injured in a one-car accident. Coleman brought an
action in the United States District Court against Brian Yeager,
the driver, who is insured by Farm Bureau Mutual Insurance
Company (Farm Bureau), and the car owner, Tawanna Gibson,
who is insured by Old Hickory Casualty Insurance Company (Old
Hickory). The personal injury action was settled for $50,000. Old
Hickory tendered its policy limits of $10,000 and Farm Bureau
paid the remaining $40,000. Farm Bureau brought an action in
the district court of Leavenworth, Kansas, for declaratory judg-
ment against Old Hickory to determine the extent of Old Hick-
ory's liability. Farm Bureau moved for summary judgment. The
trial court denied Farm Bureau's motion for summary judgment
and granted Old Hickory judgment. Farm Bureau timely appealed
and this case was transferred to this court pursuant to K.S.A.
20-3018(c).

The facts are not in dispute. Old Hickory issued a 30-day automobile liability policy to Gibson on a 1973 Ford Maverick which was registered in the State of Louisiana. At the time the policy was issued, Gibson was a resident of Sulphur, Louisiana. The insurance policy provided $10,000 maximum bodily injury coverage per person per occurrence as required by Louisiana law. Old Hickory is authorized to do business in Louisiana but not in Kansas. Yeager is covered by a policy issued by Farm Bureau, which is authorized to conduct business in Kansas.

Gibson's automobile liability policy contained the following provision:

"D. CHANGES IN YOUR POLICY

"1. Except when your policy is *automatically amended to be in line with the laws of your state* no other changes will be of any effect unless or until actually endorsed on the policy by us. And no knowledge that you, your agent, or any other person may have is of any effect to make such a change until the change is actually endorsed on the policy by us." (Emphasis added.)

In its motion for summary judgment, Farm Bureau claimed Gibson was a resident of Kansas at the time of the accident. Because the minimum liability coverage required for a Kansas resident is $25,000, Farm Bureau argued that, under the terms of Old Hickory's insurance contract with Gibson, its limit of $10,000 should be increased to the $25,000 liability coverage required for a Kansas resident under the Kansas Automobile Injury Reparations Act, K.S.A. 40-3101 *et seq.*

Both parties stipulated that Gibson was a resident of Louisiana on the date the policy was issued. Farm Bureau argued that Old Hickory's policy, as written, provided insurance in conformity with the laws of the state in which the policyholder resided at the time of the accident. Old Hickory argued that Gibson was still a resident of Louisiana at the time of the accident. After finding that the only factual dispute concerned Gibson's residency at the time of the accident, the district court determined under the circumstances it was not necessary to resolve that issue.

After denying Farm Bureau's motion for summary judgment, the district court found that the terms of Old Hickory's policy were not ambiguous, stating:

"The language provides that except when your policy is automatically amended to be in line with the laws of your state no other changes will be

of any effect unless or until actually endorsed on the policy. This is a provision which defines the circumstances under which a policy may be changed. It provides that no such changes shall occur unless they are actually endorsed on the policy, unless this one exception, the policy is automatically amended to be in line with the laws of 'your state.' This policy itself does not automatically amend to be consistent with the laws of other states' financial security laws. Kansas law, likewise, if this was Tawanna Gibson's state in·the phrase, 'your state,' does not provide that a foreign insurer who is not authorized to do business, transact business in the state of Kansas must nevertheless have its [policy reformed] to be consistent with Kansas financial security limits."

Simply stated, the district court found the phrase "your state," as used in Old Hickory's policy, means the state in which the policy was issued, i.e., Louisiana.

Farm Bureau argues that a reasonable person would understand the phrase "your policy is automatically amended to be in line with the laws of your state" to mean that the insurance would automatically provide the minimum bodily injury required by the state's insurance laws where the insured resides.

Regardless of the construction of a written contract made by the trial court, on appeal a contract may be construed and its legal effect determined by an appellate court. To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it generally uncertain which one of two or more meanings is the proper meaning. The language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties. Where the terms of a policy of insurance are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail. Since the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage provided in the policy, it must use clear and unambiguous language in doing so; otherwise, the policy will be liberally construed in favor of the insured. When an insurance contract is not ambiguous, the court may not make another contract for the parties. Its function is to enforce

the contract as made. *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 713, 732 P.2d 741 (1987).

Prior to determining that the policy language was not ambiguous, the district court looked to other jurisdictions for guidance. It is necessary that we review those cases relied on by the district court.

*American Hardware Mut. Ins. Co. v. Bradley*, 153 N.J. Super. 72, 379 A.2d 53 (1977), concerns an automobile policy issued in New York on a vehicle registered in New York and involved in an accident in New Jersey. New Jersey law required $15,000 minimum liability coverage. The New York policy provided $10,000 coverage. The policy stated that "terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes." 153 N.J. Super. at 76. The New Jersey court noted that this clause merely stated that the policy would conform to the laws of the state where issued. It found that it would be "unreasonable to assume a gratuitous undertaking by the insurer to have a policy issued in one state ambulate elsewhere to provide coverage under the financial responsibility laws of all other states through which the insured might happen to pass." 153 N.J. Super. at 78. The court held that the policy's statement it would conform to the statutes of the state where issued could not be interpreted to mean the minimum limits set by New Jersey, where the accident occurred. See *Stewart v. National Insurance*, 171 N.J. Super. 457, 410 A.2d 48 (1979) (Pennsylvania policy should not be read to provide the limits of the New Jersey statute).

In *Protective Casualty Insurance v. Cook*, 734 S.W.2d 898 (Mo. App. 1987), an automobile policy issued in Florida provided $10,000 liability coverage. The accident occurred in Missouri, which required $25,000 minimum coverage. The Missouri court refused to increase coverage, finding that absent any provision in the policy or Missouri statutes, it could not reform the insurance policy to provide increased coverage. See also *Delos Reyes v. Travelers Ins. Co.*, 175 Ill. App. 3d 169, 529 N.E.2d 764 (1988).

In *Wisdom v. Stonewall Insurance Company*, 139 Ill. App. 3d 1082, 487 N.E.2d 1289 (1986), the policy contained endorsements entitled "Conformity with Financial Responsibility Laws" and

"Out of State Insurance." The "Out of State Insurance" provision in the policy stated, "If an insured person becomes subject to the financial responsibility law or the compulsory insurance law or similar laws of another state because of the ownership, maintenance or use of your insured car in that state, we will interpret this [policy] to provide any broader coverage." 139 Ill. App. 3d at 1083. The Illinois court noted that the Missouri Motor Vehicle Safety Responsibility Law comes into play only after the occurrence of a motor vehicle accident in Missouri and a person is faced with suspension or revocation of his license, registration, or operation privileges in Missouri. The *Wisdom* court found since the insured was a nonresident and driving a car that was not registered in Missouri, the Missouri sanctions regarding the driver's license and the automobile's registration could not be invoked. The court determined if the Missouri financial safety law is not applicable to the insured, the liability coverage is limited to the amount stated in the policy. 139 Ill. App. 3d at 1085-87.

*Amick v. Liberty Mut. Ins. Co.*, 455 A.2d 793 (R.I. 1983), involved an insurance policy issued in Massachusetts that, in addition to the compulsory insurance required by statute, allowed the insured to purchase a second type of insurance defined as "optional insurance." It included a section called "Optional Bodily Injury to Others," which contained the following language:

"Some other states and Canada's provinces require visiting autos to have higher amounts of bodily injury or property damage coverage than you may have purchased. But, if you have purchased any coverage at all under this part, we will automatically provide the required higher coverage." 455 A. 2d at 794.

The insured was involved in an automobile accident in Rhode Island. The Supreme Court of Rhode Island held that the extraterritorial coverage clause of an automobile policy purchased by the insured extended the limits of the insurance policy to $25,000 as required by the Rhode Island Motor Vehicle Safety Responsibility Act.

The cases cited are instructive but not controlling. The language in each of the policies discussed is not similar to the language in Old Hickory's policy.

The issue is whether the statement "your policy is automatically amended to be in line with the laws of your state" is ambiguous.

To be ambiguous, a contract must contain a provision or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation are applied to the instrument and there remains a genuine uncertainty which one of two or more meanings is the correct meaning. *Clark v. Prudential Ins. Co.*, 204 Kan. 487, 491, 464 P.2d 253 (1970).

Though Old Hickory does not do business in Kansas, it does not limit sale of its policies to residents of the state or states where it does business. When Old Hickory prepared its contract here, it had the duty to make the meaning of the policy clear. If Old Hickory intended to restrict or limit coverage provided in the policy, it should have used clear and unambiguous language in doing so. Rather than stating "your policy is automatically amended to be in line with the laws of your state," it could have merely stated that its policy would conform to the laws of the state where issued. Instead, it chose language that is susceptible to more than one meaning; therefore, the insurance contract is ambiguous and is liberally construed in favor of the insured to provide the minimum coverage required by the state in which the insured resides.

Old Hickory claims the voluntary settlement of the underlying action of *Coleman v. Yeager* in the United States District Court precludes any subsequent recovery by Farm Bureau in a declaratory judgment action in state court. Though the issue was raised in the state district court, the district court determined not to address that issue. Old Hickory chose not to cross-appeal.

In order for an appellate court to determine an issue, the issue must have been raised and determined at the trial court level. See *Kutilek v. Union National Bank of Wichita*, 213 Kan. 407, 516 P.2d 979 (1973).

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 1990 Supp. 60-256(b). There are issues of material fact that remain. To determine the minimum coverage of Old Hickory's policy, it is necessary to resolve the questions

of (1) whether Gibson was a resident of Kansas or Louisiana at the time of the accident, and (2) whether the voluntary settlement in the original action precludes Farm Bureau from obtaining any subsequent recovery from Old Hickory. We therefore reverse the district court's grant of summary judgment and remand the action to the district court for further proceedings.

Reversed and remanded.