Keith STEIL, Plaintiff,

v.

HUMANA KANSAS CITY, INC., Defendant.

No. CIV.A.99–2541–KHV.

United States District Court, D. Kansas.

Nov. 28, 2000.

Robert B. Van Cleave, Overland Park, KS, for Plaintiff.

Michael D. Moeller, Shook, Hardy & Bacon L.L.P., Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Keith Steil filed suit against Humana Kansas City, Inc. (Humana) alleging a violation of 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Security Act of 1974 ("ERISA"), based on its denial of health insurance benefits for treatment of his brain cancer. The matter is before the Court on Plaintiff's Motion For Summary Judgment (Doc. # 83) filed September 6, 2000; Defendant Humana Kansas City, Inc.'s Motion For Summary Judgment (Doc. # 85) filed September 6, 2000; and plaintiff's Request For Oral Argument Of Motions For Summary Judgment (Doc. # 94) filed September 21, 2000. Initially, the Court finds that oral argument will not materially assist in the disposition of the instant motions. Accordingly, plaintiff's request for oral argument is overruled. For reasons set forth below, the Court sustains plaintiff's motion for summary judgment and overrules defendant's motion for summary judgment.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); accord *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); see also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on

ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52, 106 S.Ct. 2505.

## Factual Background

For purposes of the cross motions for summary judgment, the following facts are uncontroverted or deemed admitted.

Xerox Corporation (Xerox) employed plaintiff from 1986 until July 1996, when he was diagnosed with brain cancer. Xerox provided plaintiff health insurance through Humana, group policy E9387.

In July 1999, plaintiff was diagnosed with a brain tumor that was subsequently determined to be CNS Lymphoma B Cell type cancer. Plaintiff sought blood brain barrier disruption ("BBBD") treatment for the cancer. By letter dated August 31, 1999, Humana informed plaintiff that the BBBD treatment which was scheduled for September 1 was not covered under the policy because Humana considered the treatment "experimental." [1] Humana noted that the treatment was part of a Phase II clinical trial.

Humana requested Dr. Richard Bender, a board certified oncologist who is familiar with BBBD, to determine whether the treatment was experimental and investigational. On September 27, 1999, without reviewing any portion of the Humana health insurance policy, Dr. Bender responded that BBBD treatment was "investigational" but that because it was part of a Phase II study, he would not classify it as "experimental."

Plaintiff again sought BBBD treatment. By letter dated October 13, 1999, Humana

---

1. In the letter, Humana erroneously cited exclusion number 2 which applies to "[e]xperimental drugs or substances." As explained below, the pertinent exclusion was number 9 which applied to "experimental and investigational" procedures and treatment methods.

informed plaintiff that his treatment was not covered under the policy because Humana considered it "experimental." That same day, Humana received a formal grievance from plaintiff's wife. By letter dated October 15, 1999, Humana replied that BBBD treatment was excluded because Humana considered it "investigational." [2]

In October 1999, plaintiff received BBBD treatment at Trinity Lutheran Hospital in Kansas City, Missouri. BBBD treatment is currently the subject of an on-going Phase II clinical trial to determine efficacy.

On December 3, 1999, plaintiff filed suit against Humana for wrongful denial of coverage under his ERISA health plan. Both parties have filed motions for summary judgment. Plaintiff asks the Court to declare that the Humana health insurance policy covers BBBD treatment. Humana asks the Court to declare that BBBD treatment is excluded because it is an experimental and investigational procedure.

### Analysis

 The Xerox ERISA plan does not give Humana discretionary authority to construe the terms of the plan. The Court therefore reviews the denial of benefits under a de novo standard of review. See *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Initially, the Court notes the general principles of insurance policy interpretation under federal common law.[3] The interpretation of an insurance policy, like other contracts, is a question of law. See *Deboard v. Sunshine Mining & Refin-*

*ing Co.*, 208 F.3d 1228, 1241–42 (10th Cir. 2000); *AMCO Ins. Co. v. Beck*, 261 Kan. 266, 269, 929 P.2d 162, 165 (1996). The insured bears the burden to show a covered loss. See *Blair v. Metro. Life Ins. Co.*, 974 F.2d 1219, 1221 (10th Cir.1992). If the insurer relies on an exclusionary clause in a policy, it must prove facts that bring a loss within the language of such clause. See id. The objective in construing the policy is to "ascertain and carry out the true intentions of the parties" by "giving the language its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean." *McGee v. Equicor–Equitable HCA Corp.*, 953 F.2d 1192, 1202 (10th Cir.1992). "[W]ords cannot be written into the agreement imparting an intent wholly unexpressed when it was executed." Id. (quoting *Wood River Pipeline Co. v. Willbros Energy Servs. Co.*, 241 Kan. 580, 586, 738 P.2d 866, 871 (1987)). "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 248 Kan. 657, 659, 810 P.2d 283, 285 (1991). A lack of definition of contract terms does not require a finding of ambiguity. See *Ford v. Metro. Life Ins. Co.*, 834 F.Supp. 1272, 1277 n. 5 (D.Kan.1993). Where the terms of an ERISA policy are ambiguous, the construction most favorable to the insured must prevail. See *Blair*, 974 F.2d at 1222; *Old Hickory*, 248 Kan. at 659, 810 P.2d at 285. If the policy is not ambiguous, the Court must enforce it as written.

**2.** Humana asks the Court to strike its letters of October 13 and 15 because plaintiff did not authenticate them. Although Humana is technically correct, it ignores the fact that in its answer to plaintiff's complaint and in the pretrial order, it admitted that the letters are authentic. See Defendants Humana Health Care Plan, Inc., Humana Kansas City, Inc., And Humana Insurance Company's Answer To Plaintiff's Complaint (Doc. # 11) filed December 28, 1999 ¶¶ 8, 10; Pretrial Order (Doc. # 98) filed October 6, 2000 at 8. In any

event, the letters are not essential to the Court's ruling and merely provide background information.

**3.** On the issue of policy interpretation, ERISA preempts Kansas law. See, e.g., Thibodeaux v. Continental Cas. Ins. Co., 138 F.3d 593, 596 (5th Cir.1998). The Court notes, however, that the principles of interpretation are nearly identical under federal and state law.

See *Am. Media, Inc. v. Home Indem. Co.*, 232 Kan. 737, 740, 658 P.2d 1015, 1019 (1983).

As its sole defense to coverage, Humana claims that plaintiff's BBBD treatment is excluded because it is experimental and investigational. The policy excludes coverage for procedures and treatment methods which are "experimental and investigational." [4] The policy does not define what procedures and treatment methods are "experimental and investigational," but it states that a medical treatment or procedure is "experimental or investigational," if it satisfies the following definition:

**■ EXPERIMENTAL AND INVESTIGATIONAL PROCEDURES AND TREATMENT METHODS** A drug, biological product, device, medical treatment or procedure is experimental or investigational if:

1. **Reliable Evidence** shows the drug, biological product, device, medical treatment, or procedure when applied to the circumstances of a particular patient is the subject of on-going phase I, II, or III clinical trials, or ·

2. **Reliable Evidence** shows the drug, biological product, device, medical treatment, or procedure when applied to the circumstances of a particular patient is under study with a written protocol to determine maximum tolerated dose, toxicity, safety, efficacy, or efficacy in comparison to conventional alternatives, or

3. **Reliable Evidence** shows the drug, biological product, device, medical treatment, or procedure is being delivered or should be delivered subject to the approval and supervision of an Institutional Review Board (IRB) as required and defined by federal regulations, particularly those of the U.S. Food and Drug Administration or the Department of Health and Human Services, or

4. **Reliable Evidence** shall mean only published reports and articles in the authoritative medical and scientific literature; the PDQ database of the National Cancer Institute; the written protocol or protocols used by the treating facility of the protocols of another facility studying substantially the same drug, biological·product, device, medical treatment or procedure; the written informed consent used.by the treating facility of another facility studying substantially the same drug, biological product, device, medical treatment or procedure; or regulations and other official actions and publications issued by the U.S. Food and Drug Administration of the Department of Health and Human Services.

The above definition, which applies to experimental or investigational procedures, is mere surplusage in the Humana policy because the policy exclusion applies only to procedures which are both experimental and investigational. A reasonable person in the position of a plan participant would understand that if one of the first three subsections is satisfied, the medical treatment or procedure is deemed experimental or investigational.[5] Such a person would not understand, however, the policy definition applies to an exclusion which includes the phrase "experimental and investigational." A reasonable person would be baffled by the fact that the policy excludes coverage for "experimental and investigational" procedures and, instead of defining that clause, defines an extraneous clause which is nowhere referenced in the policy. The difference between "and" and "or" is too fundamental for a reasonable person to

---

4. Exclusion number 9 provides that no services will be provided for or on account of "procedures and treatment methods which are experimental and investigational. In the case that such procedures or methods become generally accepted as safe, effective and accepted practice, they will be provided from that time on."

5. A reasonable person would be confounded by any effort to make sense out of the "or" which follows paragraph 3 and the relationship between paragraph 4 and the balance of the policy definition of "experimental or investigational." The Court does not need to weigh in on that issue because this case does not implicate the last paragraph.

conclude that the phrase "experimental and investigational" is synonymous with "experimental or investigational."

Humana argues that the terms "experimental" and "investigational" are often used synonymously and interchangeably. If Humana intended to use the terms interchangeably in its policy, it should not have explicitly distinguished "experimental and investigational" procedures and treatment methods from those which are "experimental or investigational." Moreover, the "title" of the definition section which includes the word "and" does not alter the content of the definition section, which clearly applies to the phrase "experimental or investigational." Humana might argue that the term "or" in the second sentence of the policy definition should be read as an "and," based on the title of the section. To reach this conclusion, however, the Court would have to twist the language of the policy and essentially insert a clause which states that the phrase "experimental and investigational" means "experimental or investigational." A more plausible interpretation of the policy definition is that it only defines the phrase "experimental or investigational." At a minimum, the policy definition is ambiguous and absent any extrinsic evidence, the Court must construe it in favor of plaintiff. See *Blair*, 974 F.2d at 1222; *Old Hickory*, 248 Kan. at 659, 810 P.2d at 285; see also *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir.1998) (summary judgment regarding ambiguous provision proper where no extrinsic evidence presented); cf. *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1515 (10th Cir.1996) ("When conflicting extrinsic evidence must be evaluated in order to illuminate a plan's terms, summary judgment is not appropriate.").

Humana also contends that limiting the definition to either experimental or investigational procedures would render the applicable exclusion meaningless.[6] The Court disagrees. The *definition* is meaningless, but Humana could prevail under the *exclusion* if it proved that the procedure was both "experimental and investigational" as those terms are commonly understood by a reasonable plan participant. Humana essentially asks the Court to ignore the "or" in the definition section and substitute the word "and." As explained above, the Court cannot rewrite the agreement "imparting an intent wholly unexpressed when it was executed." *McGee*, 953 F.2d at 1202. Humana must bear the burden of uncertainty created by its carelessly drafted policy.

Absent a policy definition of the phrase "experimental and investigational," the Court must turn to the common and ordinary meaning of those terms. Neither party offers a precise definition of the term "experimental." "Experimental" ordinarily is defined as relating to "[a] test performed to demonstrate a known truth, examine the validity of a hypothesis, or ascertain the efficacy of something previously untried." Webster's II New Riverside University Dictionary at 454 (1988). The Court does not need to further refine this definition because the uncontested evidence establishes that BBBD treatment is not "experimental" within the ordinary meaning of that term. Both plaintiff's expert, Dr. Robert E. Pluenneke, and defendant's expert, Dr. Bender, agree on this point.[7] The Court therefore sustains

---

**6.** Although it is not material to the Court's ruling on the instant motions, the Court notes that Humana itself has had difficulty explaining how its policy should be read. It first claimed that the exclusion applies because the procedure is "experimental." Then, it argued that the exclusion applies because the procedure is "investigational." In a subsequent letter to the Kansas Insurance Department, Humana stated that coverage is not provided because the treatment is "experimental or investigational." Now, in this litigation, Humana claims that the treatment is not covered because it is both "experimental and investigational."

**7.** Based on the policy definition, Dr. Bender maintains that the BBBD treatment is both experimental and investigational. Before examining the policy, however, he stated that

plaintiff's motion for summary judgment and overrules defendant's motion. Based on the Court's ruling, it need not decide if the BBBD treatment is investigational.

In its motion for summary judgment and in opposition to plaintiff's motion, Humana relies solely on its policy definition. Humana has not offered any evidence which raises a genuine issue of material fact whether BBBD treatment is included within the ordinary meaning of the term "experimental." [8] Even if it could do so, the Court would find that the term is ambiguous in the medical context. See *Taylor v. Blue Cross/Blue Shield*, 205 Mich.App. 644, 517 N.W.2d 864, 868 (1994); *Dahl–Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1383 (11th Cir.1993); *Pirozzi v. Blue Cross,–Blue Shield of Va.*, 741 F.Supp. 586, 589 (E.D.Va.1990); *Johnson v. Dist. 2 Marine Engineers Beneficial Ass'n*, 857 F.2d 514, 516 (9th Cir.1988); see also *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 800 (10th Cir.1995) (in dicta, stating that it is inclined to agree that "experimental" is ambiguous). "A reasonable person could interpret 'experimental' to mean a medical procedure which is designed solely for testing a hypothesis without contemplation that any benefit whatsoever would be gained by the patient or it could mean a medical procedure which is designed primarily for providing a benefit for the patient but which would have the side effect of testing a hypothesis." *Taylor*, 517 N.W.2d at 868. The Court need not resolve this ambiguity, however, because Humana has not argued, or offered any evidence which suggests, that BBBD treatment is included within

the ordinary meaning of the term "experimental."

Plaintiff also attempts to assert a breach of contract claim based on Humana's failure to allow him to appear before the Humana grievance committee. Humana correctly notes that plaintiff failed to assert such a claim in the pretrial order. The Court therefore will disregard it. See Fed.R.Civ.P. 16(e) (pretrial order supersedes all pleadings and controls subsequent course of case); D. Kan. Rule 16.2(c) (same); *Hullman v. Board of Trustees of Pratt Community College*, 950 F.2d 665, 667 (10th Cir.1991). Even if the Court were to consider the claim, it is preempted by ERISA. See *Cannon v. Group Health Service*, 77 F.3d 1270, 1273–74 (10th Cir.), cert. denied, 519 U.S. 816, 117 S.Ct. 66, 136 L.Ed.2d 27 (1996).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion For Summary Judgment (Doc. # 83) filed September 6, 2000 be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED** that Defendant Humana Kansas City, Inc.'s Motion For Summary Judgment (Doc. # 85) filed September 6, 2000 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that plaintiff's Request For Oral Argument Of Motions For Summary Judgment (Doc. # 94) filed September 21, 2000 be and hereby is **OVERRULED.**

---

the treatment was not experimental. Humana has not offered any evidence which contradicts Dr. Bender's original opinion, i.e. that BBBD treatment is not included within the ordinary meaning of the term "experimental." Dr. Bender's attempt to read the policy definition to apply to "experimental and investigational" methods is not entitled to any deference and is essentially a legal conclusion. Moreover, as explained above, the Court finds that the definition for "experimental and investigational" methods is surplusage in the Humana policy.

**8.** At the status conference on November 28, 2000, defense counsel acknowledged that the only potential factual issue remaining for trial is whether BBBD treatment has "become generally accepted as safe, effective and accepted practice" within the meaning of the second sentence in exclusion 9. The Court need not reach that factual issue, however, because as a matter of law, BBBD treatment does not satisfy the first sentence of exclusion 9. See supra note 4 (text of exclusion 9).