**PEOPLES MORTGAGE CORP., Plaintiff,**

v.

**KANSAS BANKERS SURETY TRUST CO., Defendant.**

No. 00–2547–KHV.

United States District Court, D. Kansas.

Dec. 18, 2001.

Scott J. Bloch, Christopher F. Burger, Bradley Rob Finkeldei, Stevens & Brand, L.L.P., Lawrence, KS, for Plaintiff.

Deanne Watts Hay, Ron D. Martinek, Stanley R. Parker, Parker & Hay, LLP, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Peoples Mortgage Corporation ("PMC") brings suit against Kansas Bankers Surety Trust Company ("KBS") for indemnity under an employment practices insurance policy. KBS has filed a counterclaim to recover its deductible under the policy. This matter comes before the Court on PMC's Motion For Summary Judgment (Doc. # 42) filed October 17, 2001 and KBS's Motion For Summary Judgment (Doc. # 44) filed October 19, 2001. For reasons stated below, the Court sustains both motions in part.

### Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; accord *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga, Okla.,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the non-moving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); see also *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. See *Applied Genetics,* 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. See *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. See *Anderson,* 106 S.Ct. at 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inqui-

ry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### Facts

The parties stipulate to the following facts.

On November 5, 1999, KBS issued Bank Employment Practices Policy No. EP 5630 KS ("the policy"), which insured eight entities, including PMC, in Kansas, Colorado and New Mexico. The policy was effective from November 5, 1999 to November 5, 2000.

Under the policy, which KBS drafted, KBS agreed to defend and indemnify PMC "for up to a maximum of one year of claimant's salary which [PMC] is legally obligated to pay by reason of any actual or alleged Wrongful Act arising out of an Employment Claim first Filed against [PMC] during the Policy Period." Exhibit A § 1(A), Stipulated Facts For Purposes Of Motions For Summary Judgment ("Stipulated Facts") (Doc. # 39) filed October 9, 2001.

The policy defines "employment claim" as a civil or arbitration proceeding which is brought and maintained by any past, or present Employee(s) of [PMC] for any Wrongful Act in connection with an actual or alleged wrongful dismissal, discharge or termination of employment, breach of a verbal or written employment contract, workplace harassment, failure to promote, or wrongful discipline, except as excluded from coverage under Section VI.

Exhibit A § III(a), Stipulated Facts. "Wrongful act" is defined as any actual or alleged:

(1) error or misstatement; or

(2) misleading statement; or

(3) act of omission; or

(4) breach of duty; or

(5) breach of fiduciary duty; or

(6) any other act by [PMC] for which an Employment Claim is made against [PMC] except as excluded from coverage under Section IV.

Id. § III(b).

Section IV excludes, inter alia, any employment claim "based upon, arising from, or in consequence of willfully violating, in fact, by [PMC] any statute, rule, regulation, agreement or judicial or regulatory order." Id. § IV(a)(4).

Section V(a) limits liability to

(i) all costs and expenses of the attorneys appointed by the Underwriter,

(ii) and up to a maximum of one years [sic] salary or wages of the past or present Employee ... who is making such Employment Claim if the Employee ... is awarded either front pay or back pay of salary or wages for employment services which were not and will not be actually performed the total of which is in excess of the amount shown under Item 4 of the Declarations up to the Limit of Liability as shown under Item 3 of the Declarations. The total defense costs and the one years [sic] wages and salary shall not exceed the Limit of Liability as shown in Item 3 of the Declarations. Salary and wages shall not include insurance premiums, interest, retirement or saving plan contribution/compensation, or other benefits.

Id. § V(a).

Item 4 of the declarations provides a $1000 retention for each loss. See *id.* at 1. Item 3 of the declarations limits total liability, including defense costs, to $250,000. See *id.*

In November 1999, Ricardo Gomez, a former PMC Colorado employee, demanded a termination payment pursuant to an alleged employment agreement dated February 12, 1997. Specifically, Gomez as-

serted that because he had resigned without cause and under mutually agreeable terms, on October 29, 1999 PMC was required to pay him one and half times his taxable income for the past 12 months, or $328,859. See Exhibit B, Stipulated Facts. Gomez also demanded that PMC continue to pay commissions for all loans approved and disbursed within 90 days of his resignation. See *id.*

On November 11, 1999, PMC notified KBS of the Gomez claim and provided relevant documents. See Exhibit C, Stipulated Facts. PMC told KBS that it believed Gomez had altered his alleged employment agreement. See *id.* Specifically, PMC opined that paragraph 11D appeared in a different font and was not in the original contract. See *id.* KBS agrees that the employment agreement appears to have "a suspicious difference between the print of agreement, and the typeface of the provision allegedly entitling Gomez to quit and obtain $328,000...." Memorandum In Support Of Motion For Summary Judgment ("PMC Memorandum") (Doc. # 43) filed October 19, 2001 at 2, ¶ 2. PMC does not have a copy of the agreement, see Stipulated Facts ¶ 10, and Gomez has not produced the original. See *id.*

By letter dated November 11, 1999, KBS suggested that the policy might not cover the claim because the alleged employment agreement stated that "[t]his Agreement shall not be construed as an Employment Contract." Exhibit D, Stipulated Facts. KBS requested that PMC keep it informed of any developments and notify it immediately if Gomez filed suit. See *id.*

On November 19, 1999, PMC demanded that KBS "re-examine its position and provide coverage of th[e] claim." Exhibit E, Stipulated Facts. Specifically, PMC stated:

The essence of the claim by Mr. Gomez is that the document is, in fact, an "Employment Contract" and therefore coverage is applicable under our policy. Further, Colorado and Kansas Courts universally recognize the notion that labels or phrases describing documents do not control.

*Id.* On the same date, KBS replied that it had not declined coverage and that it could not decide coverage until Gomez filed an agency or court proceeding. See Exhibit F, Stipulated Facts.

On December 16, 1999, Gomez filed suit in Colorado state court. See Exhibit I, Stipulated Facts. Gomez claimed that under his employment contract he was entitled to a termination payment in the amount of $328,859. See *id.* ¶¶ 7–10. Gomez also claimed that he was entitled to attorneys fees and punitive damages because PMC had acted unreasonably and without justification. See *id.* ¶¶ 11–18. PMC filed a counterclaim asserting that Gomez had fraudulently altered the employment agreement. See Exhibit I at 4–6, Stipulated Facts.

On December 22, 1999, PMC notified KBS of the Colorado suit. See Exhibit G, Stipulated Facts. The same day, KBS appointed counsel to represent PMC. See Exhibit H, Stipulated Facts. KBS told PMC that it would pay the cost and expenses of the appointed attorney subject to the policy deductible and liability limit. See *id.* KBS also asserted that the policy did not cover a contractual obligation to make a termination payment because such payment is not an award for back pay or front pay of salary or wages. See *id.*

The Colorado suit went to mediation on August 18, 2000. In a letter on the same date, PMC demanded that KBS authorize payment up to the policy limit to settle the case. Specifically, PMC wrote:

As you have been informed, there is a mediation scheduled for today, August 18, 2000. We have requested authority from you to settle the case. You have refused to provide any authority to settle the case. We believe that this demonstrates bad faith on the part of [KBS] in defending this claim against [PMC]. [PMC] intends to proceed with the mediation in an effort to resolve the claim. We are not waiving our claim for coverage under our policy by entering into this mediation. Indeed, you are invited to participate and have elected not to participate in an effort to settle the claim. We believe it is incumbent upon [KBS] to make an effort to settle the claim within the policy limits if at all possible as an insurer for PMC. In the event that we structure a settlement with the Plaintiff, it is our intent to immediately file a claim for the amount of the settlement with you.

Exhibit L, Stipulated Facts.

During the course of the mediation, KBS agreed to contribute $10,000 toward settlement to save legal costs. See Exhibit M, Stipulated Facts. Ultimately, PMC agreed to pay $175,000 to settle the case. See Stipulated Facts at ¶ 14. On August 22, KBS issued PMC a check for $10,000. See *id.* at ¶ 15.

By letter dated September 26, 2001, KBS requested that PMC pay the policy deductible of $1,000. See Exhibit P, Stipulated Facts. On October 13, 2000, PMC refused to pay the deductible and demanded payment from KBS in the amount of $165,000 to reimburse its settlement costs. See Exhibit Q, Stipulated Facts. KBS maintained its position that the policy did not cover the settlement payment. See Exhibit R, Stipulated Facts.

Under the agreement dated February 12, 1997, Gomez was entitled to a yearly salary of $40,000, plus commissions based on the number of loans he originated and additional compensation based on a multiplier of retail production.[1] See Exhibit C ¶¶ 7(A), (B) and (C), PMC Memorandum.

## Analysis

PMC seeks reimbursement for its settlement payment to Gomez, plus attorneys fees under K.S.A. § 40-256. KBS seeks to recover the $1,000 deductible. Both parties contend that they are entitled to summary judgment on PMC's claims for reimbursement and attorneys fees. KBS also asserts that if the policy provides coverage, it limits liability to Gomez's base salary of $40,000. In addition, KBS urges summary judgment on its counterclaim to recover the policy deductible.

## I. Policy Coverage

 The interpretation of an insurance policy, like other contracts, is a question of law.[2] See *AMCO Ins. Co. v. Beck*, 261 Kan. 266, 269, 929 P.2d 162, 165 (1996). Terms in an insurance policy are generally given their plain and ordinary meaning unless the parties have expressed a con-

---

1. PMC asserts that Gomez earned about $219,239 during the 12 months preceding his resignation. See Response To Defendant's Motion For Summary Judgment (Doc. # 47) filed October 31, 2001 at 13 n. 1 and Reply To Defendant's Response To Plaintiff's Motion For Summary Judgment (Doc. # 50) filed November 19, 2001 at 8 n. 2. PMC calculates this number based on Gomez's claim that $328,859 represents one and a half times the amount which Gomez earned during the year preceding his resignation ($328,859/1.5 = $219,239.33). The Court does not accept the calculation as an undisputed fact, however, because PMC did not include it in its fact section pursuant to D. Kan. 56.1(a) and (b).

2. The parties do not address which state law applies to the insurance contract interpretation. For purposes of the pending motions, the Court assumes that either Kansas law applies or that no conflict exists between Kansas law and the applicable state law.

trary intent. See *Pink Cadillac Bar & Grill, Inc. v. U.S. Fid. & Guar. Co.*, 22 Kan.App.2d 944, 948, 925 P.2d 452, 456 (1996). "[T]he test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean." *Farm Bureau Mut. Ins. Co. v. Winters*, 248 Kan. 295, 300, 806 P.2d 993, 996 (1991). "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 248 Kan. 657, 659, 810 P.2d 283, 285 (1991). "Where the terms of a policy of insurance are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail." *Id.* If the policy is not ambiguous, the Court must enforce it according to its terms. See *Am. Media, Inc. v. Home Indem. Co.*, 232 Kan. 737, 740, 658 P.2d 1015, 1019 (1983). As the insured, PMC has the burden to prove coverage under the policy. See *Shelter Mut. Ins. Co. v. Williams*, 248 Kan. 17, 29–30, 804 P.2d 1374, 1383 (1991). KBS bears the burden to show that the loss is excluded by a specific provision in the policy. See *id.*

PMC asserts that Section I(A) covers its reimbursement claim. In order prove coverage under Section I(A), PMC must show that (1) it was "legally obligated" to pay Gomez, (2) for an actual or alleged "wrong-

ful act," (3) which arose out of an "employment claim." Exhibit A § 1(A), Stipulated Facts. The Gomez claims constitute an "employment claim" because they were brought "in connection with an actual or alleged ... breach of a verbal or written employment contract."[3] Exhibit A § III(a), Stipulated Facts. Likewise, they constitute a "wrongful act" under the policy because PMC's failure to pay could be considered an actual or alleged "error," "act of omission," "breach of duty" or "any other act." Id. § III(b)(1), (3) and (6).

In a somewhat tortured analysis, KBS asserts that PMC was not required to pay Gomez *by reason of* an alleged wrongful act arising out of an employment claim. KBS reasons that PMC was obligated to pay Gomez only if it owed the money under (or "by reason of") the employment agreement of February 12, 1997. KBS asserts that the Court cannot reasonably read the policy to require KBS to indemnify PMC for amounts which it refuses to pay under employment contracts, because such a result would encourage PMC to breach all of its employment agreements to recover under the policy. This analysis ignores the policy exception for willful violations of any agreement. See Exhibit A § IV(a)(4), Stipulated Facts. PMC cannot recover if it willfully refuses to pay amounts due under employment contracts. Here, the parties agree that PMC had a good faith defense to the Gomez claims.[4] Thus the policy exception does not apply.

---

**3.** KBS asserts that the Gomez claims were not for breach of an employment contract because the February 12, 1997 agreement states that it shall not be construed as an employment contract. See Response To Plaintiff's Motion For Summary Judgment ("KBS Response") (Doc. # 48) filed November 2, 2001 at 5–6. In making this argument, however, KBS overlooks the plain language of the policy, which states that an employment claim includes an *alleged* breach of employ-

ment contract. See Exhibit A at § III(a), Stipulated Facts. Clearly, Gomez alleged that PMC breached an employment contract.

**4.** KBS argues that Gomez *alleged* that PMC's refusal to pay was willful. See KBS Response at 4. What Gomez *alleged*, however, is not probative. KBS provides no evidence that PMC willfully refused to pay amounts due under the employment agreement.

KBS also argues that PMC was not *legally obligated* to pay Gomez because it voluntarily agreed to settle the claims. This argument overlooks well-settled Kansas law, which allows an insured to recover amounts paid to settle a covered claim if the settlement is reasonable in amount and made in good faith. See *Glenn v. Fleming*, 247 Kan. 296, 318, 799 P.2d 79, 93 (1990); see also *Insurance Co. of North Am. v. Medical Protective Co.*, 768 F.2d 315, 321 (10th Cir.1985) (insurer owes duty to insured to act in good faith and without negligence in defending and settling claims). PMC bears the initial burden to prove a prima facie case by producing evidence of good faith and reasonableness. See *id.* KBS bears the ultimate burden of persuasion to show that the settlement was unreasonable or made in bad faith. See *id.*

On this record, the Court cannot determine the reasonableness of settlement because neither party has produced evidence to carry its burden. PMC has shown that it had a good faith defense to the Gomez claims, but it provides no evidence to support that the settlement was reasonable and made in good faith. Likewise, KBS has not shown that the settlement was unreasonable or made in bad faith. Thus summary judgment on PMC's reimbursement claim is not appropriate.

## II. Policy Limitations

KBS asserts that Section V(a) precludes coverage because the settlement payment did not constitute front pay or back pay of salary or wages.[5] Section V(a) states that KBS "shall be liable to pay only ... up to a maximum of one years [sic] salary or wages ... if the Employee ... is awarded either front pay or back pay of salary or wages for employment services which were not and will not be actually performed." Exhibit A § V(a), Stipulated Facts. Because Section V(A) attempts to limit coverage, the Court construes it narrowly. See *Kansas State Bank & Trust Co. v. Emery Air Freight Corp.*, 656 F.Supp. 200, 202 (D.Kan.1987) (exclusions or limitations construed narrowly because insurer, having expressed coverage through broad promises, assumes duty to define limitations in clear and explicit terms).

By its own terms, Section V(A) applies *if* the employee is awarded front pay or back pay. Construed narrowly, the provision cannot reasonably be read to limit all coverage under the policy to awards of front pay or back pay. Section 1(A) broadly provides coverage for up to a maximum of one year of claimant's salary which PMC is required to pay because of an actual or alleged wrongful act arising out of an employment claim. See Exhibit A § 1(A), Stipulated Facts. Nothing in the provision purports to limit coverage to awards of front pay or back pay. If KBS intended to so limit coverage, it should have used language which clearly revealed its purpose. See *Kansas State Bank*, 656 F.Supp. at 202. The Court thus finds that the policy does not limit coverage solely to awards of front pay or back pay.

KBS also asserts that the policy limits recovery to Gomez's base salary of $40,000. Section 1(A) provides coverage "for up to a maximum of one year of claimant's salary." The policy does not define the term "salary." At least in some contexts, the term includes commissions and other compensation paid for services. See, e.g., 26 C.F.R. § 301.6331–1(b) (term

---

5. KBS also argues that Section V(a) precludes coverage because Gomez did not receive a court award. As discussed above, this argument ignores Kansas law regarding settlement of insured claims. Moreover, as discussed below, Section V(a) does not limit liability with regard to the Gomez claims.

"salary or wages" includes compensation for services paid in form of fees, commissions, bonuses and similar items) (treasury regulation regarding tax levy). KBS could have expressly limited coverage to an employee's base salary excluding commissions and other compensation. It did not. At best, the policy is ambiguous with respect to whether the term "salary" includes commissions and other compensation. The Court therefore construes it in favor of PMC. See *Farm Bureau*, 248 Kan. at 659, 810 P.2d at 285. Total recovery under the policy is thus limited to the amount which Gomez earned during the 12 months preceding his resignation, including commissions and other compensation.

### III. Attorneys Fees

PMC claims that it is entitled to attorneys fees. K.S.A. § 40–256 permits an insured to recover attorneys fees where the Court finds that an insurer "has refused without just cause or excuse to pay the full amount of [the] loss." Whether an insurer has refused to pay a claim without just cause depends upon the facts and circumstances of each case. See *Allied Mut. Ins. Co. v. Gordon*, 248 Kan. 715, 735, 811 P.2d 1112, 1125 (1991). The Court must deny attorneys fees if a good faith legal controversy exists or if the insurer has a bona fide and reasonable factual ground for refusing to pay. See *id.* The Court reserves judgment on this issue until after it has heard evidence regarding whether the Gomez settlement was reasonable in amount and made in good faith.

### IV. Policy Deductible

KBS seeks summary judgment on its counterclaim to recover a $1,000 deductible under the policy. PMC does not deny that KBS is entitled to the deductible; rather, PMC argues that the Court should offset the deductible against KBS's liability to PMC. See PMC Response at 13–14. At this point, PMC has not proven that KBS is liable. The undisputed facts establish that KBS is entitled to a $1,000 deductible under the policy. The Court therefore grants summary judgment in that regard.

**IT IS THEREFORE ORDERED** that PMC's Motion For Summary Judgment (Doc. # 42) filed October 17, 2001 be and hereby is **SUSTAINED in part and OVERRULED in part.** PMC is entitle to reimbursement under the policy to the extent that the Gomez settlement was reasonable in amount and made in good faith. In addition, PMC's total recovery under the policy is limited to the amount which Gomez earned during the 12 months preceding his resignation, including commissions and other compensation. The Court overrules the motion on all other grounds.

**IT IS FURTHER ORDERED** that KBS's Motion For Summary Judgment (Doc. # 44) filed October 19, 2001 be and hereby is **SUSTAINED in part and OVERRULED in part.** KBS is entitled to judgment on its counterclaim to recover a $1,000 deductible under the policy. The Court overrules the motion on all other grounds.